UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
                                           :

SMJ GROUP, INC., CIELI PARTNERS, L.P.,   :
BROOKLYN DINER USA, L.P.,            :
                                         :
                Plaintiffs,       :
                                         :      06 Civ. 1774 (GEL)

     -against-             :
                                       :      **OPINION AND ORDER**

417 LAFAYETTE RESTAURANT LLC, THE   :
RESTAURANT OPPORTUNITIES CENTER OF  :
NEW YORK, INC., JOHN DOES 1-58, JOHN   :
ROES 1-50,                          :
                                       :
                Defendants.    :
                                       :
----------------------------------------------------------------x

Thomas W. Budd and Arthur J. Robb, Clifton
Budd & DeMaria, LLP, New York, New York,
for Plaintiffs.

Daniel S. Kirschbaum, Paul, Weiss, Rifkind,
Wharton & Garrison LLP, New York, New York,
for Defendants.

GERARD E. LYNCH, District Judge:

      This action pertains to defendants' leafleting outside of restaurants owned and operated

by plaintiffs.  On July 6, 2006, the Court denied plaintiffs' motion for a preliminary injunction,

thereby permitting defendants to continue their leafleting.  While plaintiffs' motion was sub

judice, defendants moved to dismiss the complaint.  For the reasons below, defendants' motion is

granted in part and denied in part.

## BACKGROUND

      For purposes of this motion to dismiss, the Court assumes as true the facts asserted in

plaintiffs' complaint.  The relevant facts were set forth in the Court's opinion regarding

plaintiffs' motion for a preliminary injunction.  See SMJ Group, Inc. v. 417 Lafayette Restaurant LLC, – F. Supp. 2d – , No. 06 Civ. 1774, 2006 WL 1881768 (S.D.N.Y. July 6, 2006).  The facts alleged in plaintiffs' complaint can thus be summarized briefly here.

Plaintiffs own two restaurants that are at the center of this dispute: Trattoria Dell'Arte at 900 Seventh Avenue, New York, New York, and Brooklyn Diner USA at 212 West 57th Street, New York, New York.  Defendant The Restaurant Opportunities Center of New York, Inc. ("ROC") is a non-profit organization that seeks to improve conditions for New York City's restaurant workers.  As part of this mission, ROC seeks to spread a model of employee-owned restaurants.  One such restaurant is Colors Restaurant, which is operated by defendant 417 Lafayette Restaurant LLC ("417 Lafayette") at 417 Lafayette Street, New York, New York.  ROC owns a 40% interest in 417 Lafayette.[1]

In March 2006, defendants began stationing individuals outside Trattoria Dell'Arte and the Brooklyn Diner to hand out the leaflets that are the subject of this dispute.  Each leaflet is essentially a single sheet of paper folded in half to create a pamphlet.  The front of the leaflet displays the trademarked logo of one of plaintiffs' restaurants, along with the text "SPECIAL FOR YOU."  On the inside of the leaflet, the left side contains the text "DO YOU REALLY WANT TO EAT HERE?" and the right side contains the text:

> Workers from this restaurant company have sued the company in Federal Court for misappropriated tips and unpaid overtime hours worked.  More than 50 current and former workers from the restaurant company approached the Restaurant Opportunities Center of New York, complaining of misappropriated tips, unpaid overtime wages, racial and gender discrimination, sexual

---

[1] Defendants John Does 1-58 and John Roes 1-50 are employee-owners of Colors and outside-owners of Colors, respectively.

harassment, harsh working conditions in the restaurant, and
retaliation for speaking up for their rights.

SUPPORT THE WORKERS IN THEIR STRUGGLE FOR
DECENT WORKING CONDITIONS!

FOR MORE INFORMATION, PLEASE CALL ROC-NY (THE
RESTAURANT OPPORTUNITIES CENTER OF NEW YORK)
AT 212-343-1771.

The back of the leaflet contains the text:

The Restaurant Opportunities Center of New York (ROC-NY) is a
non-profit organization that seeks improved working conditions for
restaurant workers citywide.  ROC-NY assists restaurant workers
seeking legal redress against employers who violate their
employment rights.  ROC-NY seeks to provide customers and the
public with information about the litigation in this restaurant
through these handbills, not to picket or interfere with deliveries.
ROC-NY is not a labor organization and does not seek to represent
the workers or be recognized as a collective bargaining agent of
the workers at this restaurant.

Plaintiffs assert that defendants' targeting of Brooklyn Diner and Trattoria Dell'Arte is

"in furtherance of their corporate campaign against the Redeye Grill" (Compl. ¶ 6), a restaurant

that is not a party to this action, but that has some "degree of relatedness" to the restaurants here

at issue.  (TRO Hr'g Tr. 3, Mar. 7, 2006.)  On November 30, 2005, defendants sent a letter to

Redeye Grill claiming to represent that restaurant's employees.  Redeye Grill refused to

recognize defendants as the employees' representatives, prompting defendants to "commence[] a

corporate campaign against Redeye Grill, which included picketing, leafleting, dissemination of

false and defamatory statements, and coercion of customers and potential customers."  (Compl. ¶

26.)  Defendants' actions with respect to Redeye Grill are currently the subject of a New York

state court action and an action before the National Labor Relations Board.  Issues relating to

those actions are not before this Court.

3

**DISCUSSION**

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept "as true the facts alleged in the complaint," Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., 32 F.3d 697, 699-700 (2d Cir. 1994), and may grant the motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," Thomas v. City of New York, 143 F.3d 31, 36 (2d Cir. 1998) (citations omitted). The question for the Court "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996) (internal quotation marks and citations omitted). All reasonable inferences are to be drawn in the plaintiff's favor, which often makes it "difficult to resolve [the claims] as a matter of law." In re Independent Energy Holdings PLC, 154 F. Supp. 2d 741, 747 (S.D.N.Y. 2001).

Based on the factual allegations outlined above, plaintiffs assert eight causes of action – trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114, 1125; false designation under 15 U.S.C. § 1125; trademark dilution under 15 U.S.C. § 1125; trademark dilution under N.Y. Gen. Bus. Law § 360-*l*; deceptive business practices under N.Y. Gen. Bus. Law § 349; injurious falsehood under New York common law; unfair competition under New York common law; and tortious interference with prospective business under New York common law. Each cause of action will be discussed separately below.

A.  Infringement and False Designation Claims

Plaintiffs' claims under the Lanham Act for trademark infringement and false designation were the subject of the Court's prior opinion in this action. See SMJ Group, 2006 WL 1881768, at * 2-*7. The Court concluded that plaintiffs had shown a likelihood of success on these claims

4

because the confusion caused by defendants' use of plaintiffs' marks was within the scope of the
Lanham Act.  Id. at *6.  Additionally, because defendants' use of plaintiffs' marks served to
identify the source of the leaflets, the Court concluded that defendants' use of the marks was not
likely to be protected by the First Amendment.  Id. at *7.

Despite determining that plaintiffs had shown a likelihood of success on the merits, the
Court denied plaintiffs' motion for a preliminary injunction because plaintiffs had not
demonstrated a likelihood of irreparable harm.  Id. at *9.  The Court stated that the unique facts
presented in this matter did not warrant the usual presumption that irreparable harm inevitably
follows from a showing of likelihood of confusion.  Id. at *11.  However, that conclusion, which
served to defeat plaintiffs' motion for a preliminary injunction, does not support defendants'
motion to dismiss.

Plaintiffs do not need to establish a likelihood of irreparable harm to survive a motion to
dismiss.  All plaintiffs must do is sufficiently allege that they have suffered some harm that is
cognizable under the law.  The Court's determination, in connection with plaintiffs' motion for a
preliminary injunction, that plaintiffs had not established a likelihood of irreparable harm does
not compel the conclusion that plaintiffs will be unable to establish the existence of harm of any
kind.  Plaintiffs have alleged that they suffered harm as a result of defendants' actions, and that
allegation is sufficient to defeat defendants' motion to dismiss.

B.  Dilution Claims

Plaintiffs assert claims of trademark dilution under 15 U.S.C. § 1125(c) and N.Y. Gen.
Bus. Law § 360-l.  To succeed on their claim under § 1125(c) plaintiffs must show: (1) that their
marks are famous, (2) that defendants' use of their marks is "commercial use in commerce," (3)

that plaintiffs' marks were famous before defendants began using them, and (4) that defendants' use of the marks "dilutes the quality" of the marks.  See Savin Corp. v. Savin Group, 391 F.3d 439, 448-49 (2d Cir. 2004).  To succeed on their claim under New York law, plaintiffs must show (1) that they possess distinctive trademarks, and (2) that defendants' use of those trademarks results in a likelihood of dilution.  See New York Stock Exch., Inc. v. New York, New York Hotel, LLC, 293 F.3d 550, 557 (2d Cir. 2002).  A trademark may be distinctive for purposes of New York law if it has acquired secondary meaning or if it is inherently distinctive. Id.

Plaintiffs have failed to sufficiently allege their dilution claims under either the federal or state causes of action, because plaintiffs have failed to allege that their marks are sufficiently famous or distinctive to warrant protection against dilution.

The dilution provisions of the Lanham Act protect only marks that have achieved "a substantial degree of fame," TCPIP Holding Co., Inc. v. Haar Commc'ns, Inc., 244 F.3d 88, 99 (2d Cir. 2001), and that are "approaching household names," Friesland Brands, B.V. v. Vietnam Nat'l Milk Co., 228 F. Supp. 2d 399, 412 (S.D.N.Y. 2002), such as Dupont, Buick, and Kodak, the examples provided in the statute's legislative history, see TCPIP, 244 F.3d at 99 (citing House Report).

New York's dilution statute does not require that a mark be famous.  However, the mark must "possess a distinctive quality capable of dilution."  Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc., 875 F.2d 1026, 1030 (2d Cir. 1989).  Such distinctiveness may be achieved through secondary meaning, such that the mark "has become so associated in the mind of the public with that entity . . . or its product that it identifies the goods sold by that entity and

6

distinguishes them from goods sold by others."  Id., quoting Allied Maintenance Corp. v. Allied Mech. Trades, Inc., 42 N.Y.2d 538, 545 (1977).  However, a trademark's distinctiveness "in a limited geographical or commercial area does not endow it with a secondary meaning for the public generally."  Mead, 875 F.2d at 1030.  Much like the legislative history behind the Lanham Act, the history of New York's dilution statute lists Dupont, Buick, Schlitz, Kodak, and Bulova as examples of marks that merit protection from dilution.  Id. at 1031.  Accordingly, while the New York statute does not share the Lanham Act's requirement that the mark be famous, courts in this district have concluded that "the standards for establishing the distinctiveness required to show dilution under New York law closely resemble the standards for fame under the [Lanham Act]."  Empresa Cubana Del Tabaco v. Culbro Corp., No. 97 Civ. 8399, 2004 WL 602295, at *54 (S.D.N.Y. Mar. 26, 2004).

Plaintiffs have failed to allege sufficient facts to state a claim under either federal or New York dilution statutes.  With respect to the fame or distinctiveness of their marks, plaintiffs allege only that their marks are "widely recognized by customers as being associated with the high quality dining experience offered by" plaintiffs (Compl. ¶¶ 52, 54), and that they have "become uniquely associated with" their respective restaurants (id. ¶¶ 74, 75).  Plaintiffs argue that these allegations are sufficient to make out a claim of dilution because they "plainly set forth that plaintiffs used the Marks continuously over a course of years, while they generated millions of dollars in business, such that the Marks became uniquely associated with plaintiffs' high-quality service."  (Pl. Mem. 17.) However, plaintiffs' allegations regarding continuity of use, level of sales, or association do not establish the requisite level of distinctiveness in the general public.

Neither continuous use of a mark nor a high volume of sales is sufficient to establish a claim for dilution.  See, e.g., TCPIP, 244 F.3d at 99 (finding that plaintiff failed to establish dilution claim despite existence of 228 retail stores, $280 million in sales, and thirty years of continuous use).  Rather, plaintiffs must allege that their marks are sufficiently distinctive and famous in the eyes of the general public.  Plaintiffs' allegation that the marks are recognized by *customers* of the restaurant does not establish the requisite level of fame or distinctiveness.  Marks such as Buick, Dupont, and Kodak – examples listed in the legislative history of both statutes – are recognized by more people than just the users of those products; they are associated with their respective products "in the mind of the public."  Mead, 875 F.2d at 1030.  As plaintiffs have not alleged a sufficient level of public recognition, their dilution claims will be dismissed.

    C.  Deceptive Business Practices Claim

Plaintiffs' Fifth Cause of Action asserts a claim of deceptive business practices under N.Y. Gen. Bus. Law § 349.  To state a claim under § 349 a plaintiff must allege that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result."  Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000).

However, § 349 "is, at its core, a consumer protection device," Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995), not a tool to resolve disputes between private parties. Therefore, for the statute to apply a plaintiff must establish a "direct harm to consumers" that is greater than the "general consumer confusion" commonly found in trademark actions.  See Sports Traveler, Inc. v. Advance Magazine Publishers, Inc., No. 96 Civ. 5150, 1997

WL 137443, at *3 (S.D.N.Y. Mar. 24, 1997).  The "gravamen" of the claim must be an alleged

injury to consumers or the general public.  See Schnabolk, 65 F.3d at 264.  Courts in this district

have explained that the sort of harm necessary to establish consumer injury includes harms such

as "potential danger to the public health or safety."  Gucci Am., Inc. v. Duty Free Apparel, Ltd.,

277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003) (collecting cases).

Plaintiffs fail to sufficiently allege public harm to state a claim under § 349.  In support

of their claim under § 349, plaintiffs allege that defendants' leaflets "deceive customers and

potential customers" (Compl. ¶ 94) and "caus[e] *Plaintiffs* harm" (id. ¶ 97) (emphasis added).

Plaintiffs do not allege any harm to consumers or the general public, besides the general

confusion that always exists in connection with a claim of trademark infringement.  Drawing all

inferences in plaintiffs' favor, the most serious harm an individual member of the public could

suffer as the result of viewing one of defendants' allegedly misleading leaflets is the possibility

that, based on the claims in the leaflet, the individual would pass up a meal at one of plaintiffs'

establishments and settle for a less appetizing meal elsewhere.  That difference in relative meal

satisfaction is a far cry from the type of harm necessary to make out a claim under § 349, such as

a concern for public safety related to the danger from fires, the harm that justified the Court of

Appeals's application of § 349 in Schnabolk, 65 F.3d at 264, or even the economic harm

generally associated with consumer frauds.  Accordingly, plaintiffs have failed to state a claim

under the statute.

D.  Injurious Falsehood Claim

To state a claim of injurious falsehood, plaintiffs must sufficiently allege that (1)

defendants knowingly published false and derogatory matter regarding plaintiffs' business, and

(2) that defendants' purpose was to interfere with plaintiffs' relations with others, to plaintiffs' detriment.  Cubby, Inc. v. CompuServe, Inc., 776 F. Supp. 135, 141 (S.D.N.Y. 1991).  Plaintiffs have sufficiently alleged a claim of injurious falsehood.

The leaflets distributed by defendants claim that plaintiffs have been sued by their employees for misappropriated tips and unpaid overtime.  Plaintiffs admit that another restaurant, Redeye Grill, has been sued by defendants, but assert that neither Brooklyn Diner nor Trattoria Dell'Arte has been sued for misappropriated tips.  (Compl. ¶ 34, 40.)[2]  Accordingly, plaintiffs allege that defendants' statements were "false and derogatory" (id. ¶ 99) and that defendants published the statements "with knowledge of their falsity" (id. ¶ 100), resulting in harm to plaintiffs (id. ¶ 101).  Those allegations are sufficient to state a claim for injurious falsehood.

Defendants contend that plaintiffs have not stated a claim because "*all* of the statements contained in the leaflets at issue here are *demonstrably true*."  (Def. Mem. 19-20) (emphasis in original).  In support of this contention, defendants cite to a complaint filed in the Southern District of New York on February 23, 2006, against Redeye Grill, LP, Redeye Grill, Inc., The Fireman Group Café Concepts, Inc., Sheldon Fireman, William Duffy, Kevin Robinson, Michael Chin, and Luca Misciasci.  (Kirschbaum Aff. Ex. E; see also Alethea Arroyo et al. v. Redeye Grill, LP et al., 06 Civ. 381 (PAC).)  While defendants point to this complaint as smoking gun, none of the plaintiffs in the present action is listed as a defendant in the February 23 action relied upon by defendants.  Accordingly, on its face, the Redeye Grill complaint does not demonstrate

---

[2] Plaintiffs do not allege that defendants' claims regarding law suits for unpaid overtime are false.

anything relevant to this action, and certainly does not demonstrate the truth of the statements in defendants' leaflets.

Plaintiffs admit that there is some "degree of relatedness" (TRO Hr'g Tr. 3, Mar. 7, 2006) between Redeye Grill (a defendant in the action cited by defendants) and plaintiffs' establishments.  However, whether that relatedness is sufficient to establish the truth of defendants' claim is not a question to be resolved on this motion to dismiss.  The veracity of defendants' claims in light of the corporate structure of plaintiffs' businesses presents factual questions to be decided only after discovery.

Additionally, defendants argue that plaintiffs have failed to state a claim because defendants' statements regarding plaintiffs' alleged mistreatment of their workers "did not in any way impugn their basic competency or integrity as businesses," because the leaflets "merely called attention to the fact that they mistreat their workers."  (Def. Mem. 21.)  This characterization calls to mind the District of Columbia Circuit's "chutzpah doctrine."  See Carribean Shippers Ass'n, Inc. v. Surface Transp. Bd., 145 F.3d 1362, 1365 n.3 (D.C. Cir. 1998). The inside cover of defendants' leaflets reads "DO YOU REALLY WANT TO EAT HERE?" The leaflet implies that the answer is "no," based on the allegations of worker mistreatment contained on the facing page.  However, while arguing to the public that plaintiffs' alleged actions are sufficiently reprehensible to justify a refusal to frequent their establishments, defendants now argue to this Court that those same allegations of misconduct are of such small moment that they are not actionable.  The statements regarding worker mistreatment that plaintiffs allege to be false – statements that defendants themselves suggest justify boycotting the restaurants – are sufficiently injurious to support a claim for injurious falsehood.

11

E.  Unfair Competition Claims

Defendants contend that a claim of unfair competition is a common law trademark infringement claim.  (Def. Mem. 22.)  Accordingly, defendants argue that plaintiffs' unfair competition claim suffers from the same infirmity as plaintiffs' infringement claims – plaintiffs cannot state a claim because defendants' use of plaintiffs' marks is not likely to cause confusion.  (Id.)  The Court has already rejected this argument in connection with plaintiffs' infringement claims, and defendants offer no reason to reach a different conclusion here.  Accordingly, defendants' motion is denied with respect to plaintiffs' unfair competition claim.

F.  Tortious Interference with Prospective Business Claim

To state a claim for tortious interference with prospective business, plaintiffs must sufficiently allege that: (1) they had a prospective business relationship with a third party, (2) defendants knew of that relationship and intentionally interfered with it, (3) defendants either (a) acted with the sole purpose of harming plaintiffs, or (b) acted improperly, and (4) plaintiffs were harmed due to defendants' interference.  See Carvel Corp. v. Noonan, 350 F.3d 6, 18 (2d Cir. 2003).  To satisfy the "improper" half of the third requirement, the New York Court of Appeals has recently explained that "the plaintiff must show that defendant's conduct . . . was a crime or an independent tort."  Carvel Corp. v. Noonan, 3 N.Y.3d 182, 190 (2004).

Plaintiffs have sufficiently stated a claim for tortious interference with prospective business.  Defendants do not dispute that the passers-by in front of plaintiffs' restaurants are prospective customers, and that plaintiffs therefore have a prospective business relationship with those individuals.  Nor do defendants argue that they were not intentionally interfering with that prospective relationship.  Instead, defendants argue that their interference is not "improper"

12

because "[l]eafleting on a public street is among our nation's most cherished and protected expressive activities." (Def. Mem. 24.) However, regardless of the value of leafleting as a general matter, plaintiffs have sufficiently alleged that the leafleting here at issue runs afoul of various statutory and common law causes of action based on defendants' use of plaintiffs' trademarks. The mere fact that some portion of defendants' activity is expressive does not render defendants immune from suit under federal and state trademark law. See SMJ Group, 2006 WL 1881768, at *7 (concluding that defendants' use of plaintiffs' marks is not likely to be protected by the First Amendment because the marks "serve[] to identify the source of defendants' leaflets, and [are] not part of defendants' expressive message"). Plaintiffs have sufficiently alleged that defendants' leafleting was "improper," insofar as plaintiffs have alleged that defendants' use of their marks violates federal trademark law and state unfair competition law.

However, plaintiffs' claim of tortious interference with prospective business is viable only to the extent that the interference was caused by defendants' alleged improper conduct, that is, by defendants' use of plaintiffs' trademarks. Use of plaintiffs' trademarks is not speech, it is conduct, and accordingly "the First Amendment is no bar to liability under the general common law prohibition of tortious interference with [prospective business], which . . . is directed against conduct, not speech." Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of N.Y., Inc., 968 F.2d 286, 296 (2d Cir. 1992). Defendants' expressive message, however, is not conduct, and therefore interference with plaintiffs' prospective business resulting from defendants' expressive message, as opposed to defendants' use of plaintiffs' marks, is not actionable under the common law and is protected by the First Amendment. Peaceably demonstrating outside of a business, in

13

and of itself, is not tortious interference with prospective business.

Separating the harm caused by defendants' use of plaintiffs' marks from the harm caused by defendants' expressive message may be a difficult task, but that distinction between harms need not be resolved on plaintiffs' motion to dismiss. Rather, the apportionment of harms is a question of fact, to be decided after discovery. Accordingly, plaintiffs' claim of tortious interference with prospective business survives only to the extent that defendants' actions are alleged to be independently tortious.

## CONCLUSION

Defendants' motion to dismiss is denied with respect to plaintiffs' claims of trademark infringement (First and Second Causes of Action), injurious falsehood (Sixth Cause of Action), unfair competition (Seventh Cause of Action), and tortious interference with prospective business (Eighth Cause of Action). Defendants' motion is granted with respect to plaintiffs' claims of dilution (Third and Fourth Causes of Action) and deceptive trade practices (Fifth Cause of Action). The Clerk of the Court is respectfully directed to close defendants' motion (Doc. #19) for all internal statistical purposes.

SO ORDERED.

Dated: New York, New York
       August 30, 2006

_Gerard E. Lynch_
GERARD E. LYNCH
United States District Judge

14